UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

DOUGLAS WALSTON, Individually and on behalf         Civil Action No. 15-0457
Of all others similarly situated,

                              Plaintiff,

             -against-

EDWARD J. YOUNG, INC. d/b/a STANLEY
STEEMER CARPET CLEANERS and
EDWARD J. YOUNG,

                   Defendants.
_____


---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFS' MOTION FOR CONDITION CERTIFICATION

---

ALAN B. PEARL & ASSOCIATES, P.C.
*Attorneys for Defendants*
Alan B. Pearl, Esq.
Brian J. Shenker, Esq.
6800 Jericho Turnpike, Suite 218E
Syosset, New York 11791
Tel: (516) 921-6645
Fax: (516) 921-6774

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ………………………………………………………..…iv

INTRODUCTION ………………………………………………………………………1

I.     The Standard for Conditional Certification of a Collective Action……………....1

a.   Ibrahim Demirkan's Declaration Should be Disregarded ……………………....2

b.   The Proposed Class is Not Similarly Situated………………………………...3

i.  Plaintiff Has Failed to Name a Similarly Situated Employee…………3

ii.  Crew Chiefs are Not Similarly Situated to Helpers and Assistants…...4

1.  According to Plaintiff Crew Chiefs Had Different Duties Than Assistants and Helpers ………………………………….…..4

2.  According to Plaintiff Crew Chiefs Were Subject to a Different Compensation Policy Than Assistants and Helpers…………...5

iii.  Plaintiff Walston is Not Similarly Situated to Other Crew Chiefs Since They Were Subject to Different Compensation Policies ……………...5

c.   Plaintiff Has Failed to Prove a Common Policy or Scheme that Violates the FLSA………………………………………………………………………..…7

i.  Plaintiff was Not Entitled to Overtime Compensation…………………9

ii.  Defendant EJY is a Retail or Service Establishment……………..…9

iii.  Plaintiff's Regular Rate of Pay was in Excess of One and One-Half Times the Minimum Wage ……………………………………………..…10

iv.  More Than Half of Plaintiff's Compensation Came from Commissions……………………………………………………………11

II.    Plaintiff's Motion for Conditional Collective Action Certification Should be Deferred Until After the Court Rules on Defendants' Upcoming Motion for Summary Judgment ………………………………………………………………..14

III.   The Proposed Notice of Pendency is Improper ……………………………15

a.   The Proposed Class is Overbroad ………………………………….……………..15

b.   Plaintiff is Not Entitled to Send Notice to Crew Chiefs Dating Back Six Years From the Filing of the Complaint …………………………………….……...16

c.   The Notice Should Not be Posted at EJY's Business Location ………………19

d.   Plaintiff is Not Entitled to Production of Employees' Phone Numbers ………..19

e.   The Content of the Notice is Improper ………………………………………..20

CONCLUSION …………………………………………………………………...……….21

## Federal Cases

*Amendola v. Bristol-Myers Squibb Co.*, 558 F.Supp.2d 459, 467 (S.D.N.Y. 2008).............. 10, 17

*Dreher v. AAA Abachman Enterprises, Inc.*, 02-cv-80575, Doc. # 70, (S.D. Fla. Oct. 17, 2003) 12

*Encarnacion v. Astrue*, 491 S.Supp.2d 453, 459 (S.D.N.Y. 2007)................................. 17

*Erichs v. Venator Group, Inc.*, 128 F.Supp.2d 1255, 1259 (N.D. Cal. 2001) ....................... 12, 15

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007)........................ 6

*Laroque v. Domino's Pizza*, 557 F.Supp.2d 346, 355 (E.D.N.Y. 2008) ...................................... 20

*Lee v. Ethan Allen Retail, Inc.*, 651 F.Supp.2d 1361, 1367 (N.D. Ga. 2009).............................. 16

*Lin v. Benihana Nat'l Corp.*, 755 F.Supp.2d 504, 509-11 (S.D.N.Y. 2010) .................................. 6

*Lujan v. Cabana Management, Inc.*, 10-cv-755, 2011 WL 317984, at *9 (E.D.N.Y. Feb. 1, 2011)
............................................................................................................................ 20

*Lynch v. United Services Auto Ass'n*, 491 F.Supp.2d 357, 368 (S.D.N.Y 2007) ........................... 4

*McBeth v. Gabrielli Truck Sales, Ltd.*, 786 F.Supp.2d 396, 399 (E.D.N.Y. 2011) ............... 19, 20

*Mendoza v. Casa de Cambio Delgado*, 2008 WL 938584, at *2 (S.D.N.Y. April 7, 2008)........... 6

*Monger v. Cactus Salon & Spa's LLC*, 08-cv-1817, 2009 WL 1916386, at *3 n. 2 (E.D.N.Y. July
6, 2009) ................................................................................................................ 20

*Morales v. Plantworks Inc.*, 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006) ............................ 6

*Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)................................................................ 5

*Pefanis v. Westway Diner, Inc.*, 2010 WL 3564426, at *3 (S.D.N.Y. Sept. 7, 2010) ................. 17

*Project Release v. Prevost*, 722 F.2d 960, 963 & n. 2 (2d Cir. 1983) ......................................... 17

*Rabin v. Mony Life Ins. Co.*, No. 06-cv-775, 2009 WL 4060978, at *6 (S.D.N.Y. Nov. 19, 2009)
............................................................................................................................ 17

*Raniere v. Citigroup Inc.,* 827 F.Supp.2d 294, 318 (S.D.N.Y. 2011) ........................................... 5

*Reich v. Delcorp., Inc.*, 3 F.3d 1181, 1183 (8th Cir. 1993) ..................................................... 12, 13

*Romero v. H.B. Automotive Group, Inc.*, 11-CV-386 (CM), 2012 WL 1514810, *8 (S.D.N.Y.

    May 1, 2012) ...................................................................................................................... passim

*Sobvzak v. AWL Industries, Inc.*, 540 F.Supp.2d 354 (E.D.N.Y. 2007) ....................................... 20

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 333 (S.D.N.Y. 2010) ............................... 12, 14, 16, 17

**Federal Statutes**

29 CFR 779.416(b) ..................................................................................................................... 15

29 U.S.C. 207(i) ................................................................................................................... 12, 13, 14

**INTRODUCTION**

Defendants Eward J. Young, Inc. d/b/a Stanley Steemer Carpet Cleaners (hereinafter "EJY"), and Edward J. Young (collectively "Defendants"), submit this memorandum of law in opposition to Plaintiff's motion for conditional certification of an FLSA collective action.  As set forth herein, Plaintiff's motion should be denied in its entirety.

**I.      The Standard for Conditional Certification of a Collective Action**

Courts in this Circuit utilize a two-stage process to determine whether FLSA collective action certification is proper.  *See Romero v. H.B. Automotive Group, Inc.*, 11-CV-386 (CM), 2012 WL 1514810, *8 (S.D.N.Y. May 1, 2012).[1]  In the first stage, the Court makes a preliminary determination regarding whether the named plaintiff and the potential opt-in plaintiffs are sufficient "similarly situated" to authorize the sending of notice and allow the case to proceed as a collective action through discovery.  *Id.*; *Lynch v. United Services Auto Ass'n*, 491 F.Supp.2d 357, 368 (S.D.N.Y 2007).

Neither the FLSA nor its implementing regulations defines "similarly situated."  Courts in this Circuit require that plaintiffs "make a modest factual showing that plaintiffs and other putative collective action members were victims of a common policy or plan that violated the law."  *Romero*, at *8.  To meet the standard, plaintiffs must proffer "substantial allegations" of a factual nexus between the named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation.  *Id.*

Plaintiff has failed to carry his burden.  First, Plaintiff was employed as a crew chief during the 3-year FLSA period (beginning January 29, 2012).  Plaintiff is not similarly situated

---

[1] The Summons and Complaint were filed on January 29, 2015.

to other helpers and assistants.  Plaintiff testified on August 6, 2015 at his deposition that helpers and assistants had different job duties than crew chiefs and that they were subject to different compensation policies than crew chiefs.  Second, Plaintiff has failed to show he is entitled to overtime compensation by alleging an unlawful pay policy.  Instead, each and every allegation set forth by Plaintiff in his Amended Complaint and Declaration, show that Plaintiff has no likelihood of showing an FLSA violation at trial. *See Romero*, at *10 (plaintiff must show that he was a victim of a "policy or plan that violated the law, i.e., that they were illegally denied overtime and minimum wage.").

"While Plaintiff's burden of proof is low, it is not non-existent – 'certification is not automatic." *Id*., *citing Raniere v. Citigroup Inc.,* 827 F.Supp.2d 294, 318 (S.D.N.Y. 2011).  Plaintiff's modest factual showing cannot be satisfied simply by unsupported assertions. *Id*.; *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  Conclusory allegations like those contained in Plaintiffs' Declarations are not enough to satisfy this burden. *Id*.

### a.  Ibrahim Demirkan's Declaration Should be Disregarded

Ibrahim Demirkan's ("Demirkan") Declaration dated May 18, 2015 should be disregarded by the Court.  Demirkan alleged that he worked for Stanley Steemer from April 2011 to July 2011.  See Consent Form attached as Exhibit A to Shenker Declaration; See Demirkan Declaration ¶ 3.  This action was commenced on January 29, 2015 and Demirkan filed a Consent form on February 4, 2015.  Id.  Demirkan's last date of employment is more than three (3) years from the date of this lawsuit.  Therefore, Demirkan has no claim under the FLSA since any such claim is time barred.  Demirkan's Declaration cannot possibly support an FLSA collective action since he was not employed by Stanley Steemer during the three years preceding this action.

Therefore, he lacks personal knowledge of Stanley Steemer's pay practices during those three years.

### b.  The Proposed Class is Not Similarly Situated

In order to proceed as a collective action, Plaintiff must show that he and potential opt-ins are "similarly situated with respect to their job duties/requirements, compensation, and employer policies." *Romero,* 2012 WL 1514810, at *8; *Lynch*, 491 F.Supp.2d at 368; *Iglesias-Mendoza v. La Belle Farm, Inc*., 239 F.R.D. 363, 367 (S.D.N.Y. 2007).  "To meet this standard, plaintiffs must proffer substantial allegations of a factual nexus between the named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation."  *Romero*, 2012 WL 1514810, at *9.

### i.  Plaintiff Has Failed to Name a Similarly Situated Employee

As discussed above, Demirkan does not have any FLSA claim against Defendants.  A review of Plaintiff Walston's Amended Complaint and Declaration reveals that he has failed to name any other employee whom he personally knows was similarly situated.  Plaintiff's failure to evidence any personal knowledge of the way other specific employees were paid is fatal to his motion for collective action certification.  *See Lin v. Benihana Nat'l Corp*., 755 F.Supp.2d 504, 509-11 (S.D.N.Y. 2010); *see Mendoza v. Casa de Cambio Delgado*, 2008 WL 938584, at *2 (S.D.N.Y. April 7, 2008) (denying collective action for failure to set forth sufficient allegations regarding a factual nexus); *see Morales v. Plantworks Inc.*, 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006) (denying collective action).  Plaintiff's allegation that a new pay policy was announced in May 2013 does not satisfy Plaintiff's burden to prove by substantial allegations that he was similarly situated to other crew chiefs, assistants, or helpers prior to that time.

### ii.   Crew Chiefs are Not Similarly Situated to Helpers and Assistants

Plaintiff broadly seeks to certify a collective action of all carpet cleaning technicians. However, during the three-year FLSA collective period prior to the filing of the Complaint, Plaintiff was only employed as a crew chief.  During the three years prior to this lawsuit Plaintiff was never employed as a helper or an assistant.  Plaintiff testified that he was an assistant from April 2009 to April 2011 and after that time he was a crew chief.  As discussed above, Demirkan was not employed at all by Stanley Steemer within the FLSA collective time period.

### 1.   According to Plaintiff Crew Chiefs Had Different Duties Than Assistants and Helpers

Plaintiff Walston testified that as a crew chief he had different job duties than helpers and assistants.[2]  Walston testified that assistants set up equipment in customers' houses and moved furniture.  Plaintiff testified that assistants did not perform cleaning services.  According to Walston, assistants had no involvement in the invoicing of customers.  Walston testified that Assistants very rarely sold services or products and were generally not allowed to handle sales.

On the other hand, Walston testified that crew chiefs did all the cleaning at the customers' premises, handled the invoicing of the customers, and dealt with the customers. Walston stated that while on a rare occasion an assistant might sell a doormat, crew chiefs handled all sales of cleaning services for items such as tile and grout, upholstery, area rugs, blinds, drapes, leather, and automobiles.

---

[2] While EJY disagrees with Plaintiff Walston's testimony regarding the job duties of helpers, assistants and crew chiefs, for the purposes of this motion the Court must accept Walston's testimony that their duties were different.  See *Romero*, 2012 WL 1514810 at *9 ("the court is not to resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations"); *see also Lynch*, 491 F.Supp2d at 368-69; *Hoffman* 982 F.Supp. at 262.

### 2.   According to Plaintiff Crew Chiefs Were Subject to a Different Compensation Policy Than Assistants and Helpers

Significantly, Plaintiff testified that crew chiefs were subject to a different compensation system than assistants and helpers.  Plaintiff testified that as a crew chief he received a higher rate of commissions than assistants received.  Plaintiff further testified that only crew chiefs received bonuses and/or commissions for add-on services.  Plaintiff testified that add-on services were those services that only the crew chief sold to the customer while at the premises.  Thus, as alleged by Plaintiff, only crew chiefs were eligible for commissions or bonuses for such services.

These are significant differences in compensation practices that Plaintiff alleges applied to him as a crew chief versus assistants and helpers.  The generalization by Plaintiff that all such employees did not receive overtime premiums does not establish a sufficient factual nexus between the pay policies applicable to Plaintiff and those applicable to the assistants and helpers.

### iii.   Plaintiff Walston is Not Similarly Situated to Other Crew Chiefs Since They Were Subject to Different Compensation Policies

The compensation plan which Plaintiff Walston alleges he was subject to is different than that which applied to other crew chiefs (not to mention helpers and assistants).  Specifically, Plaintiff alleges he received a guarantee of $10.00 per hour.  While EJY disputes the claim that Plaintiff Walston was paid a guarantee of $10.00 per hour, the Court is arguably bound accept Plaintiff's allegations and not weigh competing evidence or allegations.  Thus, the Court should determine that other crew chiefs (as well as helpers and assistants) were not similarly situated to Plaintiff since there is no substantial factual nexus between Plaintiff's compensation and those of other crew chiefs, since other crew chiefs.

As set forth in Defendants' papers, the three Declarations submitted by crew chiefs of EJY, and as evidenced in those crew chiefs' time and pay records, other crew chiefs received

commissions only.  If their commissions divided by all hours worked did not reach time and one-half the minimum wage for any week worked then EJY would supplement their commissions up to $11.00.  Crew chiefs (helpers and assistants as well) received no less than $11.00 for each hour worked per week.

Notably, Plaintiff does not allege what the "guaranteed rate" was for other crew chiefs and does not allege he has any personal knowledge of such information for the three year FLSA period.  In fact, it appears that the only purported knowledge Plaintiff Walston has of other crew chiefs' compensation is based on a March 2013 meeting where EJY announced changes to its compensation plan.  Based on the uncontroverted evidence all other crew chiefs (helpers and assistants) received at least $11.00 per hour up until March 10, 2013, since Plaintiff sets forth no testimony or evidence on the issue.  Even if Plaintiff, in his Reply, disputed this fact, his conclusory and self-serving allegation would be insufficient to overcome the three Declarations and attached wage and hour records for the three declarants.

Given the difference in the compensation structure that Plaintiff alleged applied to him and that which actually applied to other crew chiefs they are **not** similarly situated.  Based upon Plaintiff Walston's allegations regarding the $10.00 minimum rate versus the $11.00 threshold that was actually in place for other crew chiefs, the application of the retail service exemption would differ between Plaintiff and other crew chiefs.  Discussed in more detail below, the retail or service exemption requires employees to be paid at least time and one-half the minimum wage for all hours worked.  Plaintiff Walston alleges he received a minimum of $10.00 which did not meet the threshold of $10.88 ($7.25 x $1.5).  Meanwhile, other crew chiefs received more than time and one-half the minimum wage for all hours worked.  (See Declarations of John Kaminski, Louis Thomas, and Kevin Howell).

As District Judge Colleen McMahon stated, "the possible existence of exemptions may be relevant to an analysis of whether employees are similarly situated to each other." *Romero,* 2012 WL 1415810, at *6.  Given Plaintiffs' allegations, the application of the retail or service exemption to Plaintiff is different than the application to other crew chiefs.

Accordingly, Plaintiff has failed to carry his burden in showing that he is similarly situated to other crew chiefs.

### c.  Plaintiff Has Failed to Prove a Common Policy or Scheme that Violates the FLSA

Plaintiff's Complaint as well as his Declaration fail to set forth any evidence that Plaintiff and other carpet technicians were similarly situated and subjected to a common policy or scheme that violates the FLSA.  The only allegation in this regard is that Plaintiff and others worked over 40 hours per week without overtime premium pay.  However, that conclusory allegation is not enough to carry Plaintiff's burden to show he was subjected to a pay policy that violated the FLSA.  In fact, Plaintiff's own allegations prove EJY satisfied each and every element for the retail service exemption.  Even taking all of Plaintiff Walston's allegations at face value, no likelihood of a violation of the FLSA is be shown.  Based upon Plaintiff's paltry allegations it is clear that he has no chance in succeeding on his claims.[3]

According to *Amendola v. Bristol-Myers Squibb Co.*, 558 F.Supp.2d 459, 467 (S.D.N.Y. 2008):

> Where a plaintiff fails to carry this burden [to show he was a victim of a common policy that violated the law] or where a defendant employer shows either that the potential recipients of the notice are not similarly situated to the plaintiff or that it will likely

---

[3] Defendants plan to file a motion for summary judgment by mid-September 2015.  While it is clear based upon Plaintiff's wage and hour records that they are exempt from the FLSA's overtime requirements, Defendants will complete discovery to avoid a meritless defense from Plaintiff with respect to having incomplete discovery.

succeed at trial in proving that the employees are not entitled under the FLSA to overtime compensation, a court may refuse to authorize notice or postpone deciding the issue pending further discovery and motion practice.

In *Romero*, District Judge McMahon denied conditional collective certification in an exemption case.  See *Romero*, 2012 WL 1514810, at *10.  The court based its decision, in part, on the plaintiffs' exclusive reliance on the pleadings and affidavits despite the fact plaintiffs were already in possession of certain employee records obtained through discovery.  Id. ("Plaintiff does not make any showing about a widespread failure to pay minimum wage based on Defendants' pay records" even though the plaintiff had access to them").

Here, EJY produced Plaintiff's commission records, paystubs, and time records from the commencement of his employment in April 2009 through March 9, 2013.  The fact that Plaintiff's motion for conditional certification did not include as an exhibit a single one of Plaintiff's paystubs, commission statements, or time records speaks volumes.  As per *Romero*, where discovery has taken place and the plaintiff failed to support his claim with any such evidence, Plaintiff's conclusory allegations are not sufficient to carry his burden.

It is not this Circuit's law that if an employer avails itself to an exemption to the FLSA's overtime requirements that employees can automatically certify a collective action against the company simply by alleging they worked over 40 hours in a week without overtime premium pay.  However, a ruling in favor of Plaintiff on this motion would result in such inappropriate precedent.  Plaintiff must do more than show that he was treated similarly as other carpet technicians.  Plaintiff must show some evidence, however minimal, that EJY's compensation plan violated the law.  While EJY is required to prove an FLSA exemption, Plaintiff **must** at a minimum make some factual allegations and submit some proof that EJY was not entitled to the exemption which it availed itself.

Plaintiff's Complaint and Declaration do not set forth any allegation or evidence which shows the retail or service exemption did not apply to him.  There is no evidence suggesting that Plaintiff was subject to an illegal pay practice.

### i.   Plaintiff was Not Entitled to Overtime Compensation

It is undeniable that Plaintiff, and all other crew chiefs (and helpers and assistants), were exempt from the FLSA's overtime provisions.  Plaintiff was exempt pursuant to the retail or service establishment exemption.  See 29 U.S.C. 207(i).  While it is the employer's burden to prove the exemption, all of the Plaintiff's allegations fall squarely within the required elements for the exemption.

An employer is not required to pay overtime premiums to an employee of a retail establishment who has exceeded the applicable workweek if (1) the employee's regular rate of pay exceeds one and one-half times the minimum hourly rate applicable to him and (2) more than one-half of his compensation for a representative period consists of commissions on goods or services.  29 U.S.C. 207(i); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 333 (S.D.N.Y. 2010); *Erichs v. Venator Group, Inc*., 128 F.Supp.2d 1255, 1259 (N.D. Cal. 2001).

### ii.   Defendant EJY is a Retail or Service Establishment

Federal courts have routinely found that carpet cleaning companies, including Stanley Steemer Carpet Cleaner franchises, are retail or service establishments.  *See Dreher v. AAA Abachman Enterprises, Inc*., 02-cv-80575, Doc. # 70, (S.D. Fla. Oct. 17, 2003) (attached as Exhibit B to Shenker Declaration); *Reich v. Delcorp., Inc*., 3 F.3d 1181, 1183 (8th Cir. 1993). EJY provides carpet cleaning services for residential and commercial use.  EJY provides its services exclusively to the general public.  EJY performs all of its cleaning services at its

customers' premises and all of the services are provided to the end user.  EJY's crew chiefs (and helpers and assistants), such as Plaintiff, sell cleaning services and products to customers while at their premises.

In *Dreher*, the U.S. District Court for the Southern District of Florida determined that a Stanley Steemer franchise was a retail or service establishment for the purposes of U.S.C. 207(i). In *Delcorp*, the 8th Circuit found the business to be a retail or service establishment with facts that are identical to those in this case:

> [Defendant] Delcorp and its franchisee, ACC, were engaged in the in-home carpet, rug and furniture upholstery cleaning business.  ACC obtained its business initially through telephone solicitations, and its services were performed by two-person crews.  The crews would attempt to sell additional cleaning services and products while in the customer's home.  Each crew member was compensated on a commission basis, often worked more than forty hours per week and was paid a rate which exceeded one and one-half times the minimum wage.  ACC sold its products and services exclusively for family or personal use and exclusively to the general public.  *Delcorp*, 3 F.3d at 1182-83.

There is no doubt that EJY, which is a business identical to businesses in the two cases cited above, is a retail or service establishment as defined by 29 U.S.C. 207(i).

### iii. Plaintiff's Regular Rate of Pay was in Excess of One and One-Half Times the Minimum Wage

Plaintiff's Amended Complaint and Declaration contain two conclusory and incorrect allegations in his attempt to overcome the retail or service exemption (the second will be discussed in the next section).  First, as discussed in this section, Plaintiff claims he was paid a minimum of $10.00 per hour.  However, pursuant to the compensation policy in effect from at least April 2009 when Plaintiff Walston was hired until March 9, 2013, when the compensation policy was changed, crew chiefs, and all carpet technicians, received all their compensation from

commissions but in no case did they receive less than $11.00 per hour.  Therefore, they always received at least one and one-half times the applicable minimum wage of $7.25.

Plaintiff contends he received a minimum of $10.00 per hour in his Declaration and in the Amended Complaint.  However, it is very telling that despite Plaintiff Walston being in possession of all of paystubs and time records, he is unable to produce a shred of printed evidence that he received as little as $10.00 in a single week.

Accordingly, Plaintiff received a regular rate of pay in excess of one and one-half times the minimum wage in accordance with the retail or service exemption.

### iv.   More Than Half of Plaintiff's Compensation Came from Commissions

The second false and conclusory allegation set forth by Plaintiff in his Declaration and Amended Complaint is that the only commissions received by Plaintiff was on top of his alleged guaranteed hourly rate.  Plaintiff testified at his deposition that he never received any information from EJY about such a guarantee and when confronted with his commission records and pay stubs he admitted all of his pay came from commissions.  Either way Plaintiff received more than half of his compensation from commissions.

In order to qualify for the retail or service establishment exemption, over half of an employee's compensation must be from commissions on good or services.  29 U.S.C. 207(i); *Spicer*, 269 F.R.D. at 333.  Section 207(i) states:

> In determining the proportion of compensation representing commissions, **all earnings resulting from a bona fide commission rate shall be deemed commissions on goods and services without regard to whether the computed commissions exceed the draw or guarantee**. (emphasis added).  Spicer, 269 F.R.D. at 333.

The question then is whether the commission plan is bona fide which requires "an inquiry into whether the employer set the commission rate in good faith.  *Id*., *citing Erichs v. Venator Group, Inc*., 128 F.Supp.2d 1255, 1259 (N.D. Cal. 2001).  As stated in *Erichs*, and cited with approval in *Spicer*:

> Under federal law, the Plan's guarantee that managers will receive, as a minimum, hourly pay equal to one and one-half times the legal minimum does not mean that all compensation up to and including the amount of the guarantee is a salary for purposes of determining whether the amount of earnings attributable constitutes more than 50% of the employee's compensation.  As long as the payment plan is a bona fide commission plan, any compensation calculated as commission according to the plan qualifies as commission even if the employee's commissions for the week are less than the guarantee. *Erichs*, 128 F.Supp.2d at 1159; 29 CFR 779.416(b).

As stated by Judge Sand in *Spicer*, "in computing the amount of earnings attributable to commissions, 'all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee."  *Spicer*, 269 F.R.D. at 333, quoting 29 U.S.C. 207(i).

Accordingly, Plaintiff's allegations that there was a "guaranteed" component of the commission plan does not bring EJY's plan outside the scope of the exemption.  In fact, as set forth below, the plan on its face is a bona fide commission plan which resulted in Plaintiff receiving varying amounts of commissions each week, as he admitted at his deposition.

The regulations provide two examples of commission plus guarantee plans that do not qualify as bona fide.  The commission plan of EJY is unlike either of those set forth in the regulations.

First, a commission plan is not bona fide where:

> The employee, in fact, always or almost always earns the same fixed amount of compensation for each workweek (as would be the case where the computed commissions seldom or never equal or exceed the amount of the draw or guarantee). *Spicer*, 269 F.R.D. at 333; 29 U.S.C. 779.416.

Second, a commission plan is not bona fide where:

> The employee receives a regular payment constituting nearly his entire earnings which is expressed in terms of a percentage of sales which the establishment can always be expected to make with only a slight addition to his wages based upon a greatly reduced percentage applied to the sales above the expected quota.  *Id*.

Judge Sand stated that "these examples indicate that where the commission plan is designed such that the employee will almost always receive the guarantee and nothing or little more, the plan is not bona fide. *Id*.

In *Spicer*, the plaintiffs typically earned a total of $23 to $26 per hour.  *Spicer*, F.R.D. at 327.  In the event that plaintiffs did not earn enough in commissions they were guaranteed an hourly rate of at least $19 to $20.  *Id*.  Thus, if the plaintiffs earned commissions of less than $19 to $20 per hour, the employer supplemented their wages so they received at least the $19 or $20 per hour rate.  *Id*.  Analyzing this compensation plan, Judge Sand stated:

> It does not appear that plaintiffs Russo, Ledin, and Martinez "never" or "seldom" received more than the guaranteed minimum in a representative period of one month. For the limited number of events for which plaintiffs produced paystubs, Martinez received the part-time guaranteed hourly rate for thirteen of fifty seven events, Russo for eleven of eighteen events, and Ledin for nineteen of forty-four events.  None of these rations indicate that plaintiffs "never" or "seldom" received more than the guaranteed minimum hourly wage; rather, it appears that plaintiffs regularly exceeded the guarantee. *Id*. at 334.

Although Judge Sand found the compensation plan appeared to be a bona fide commission plan based on the evidence presented on the motion, the parties had supplied incomplete records and only a fraction of the records for the representative period and therefore Judge Sand found the record too incomplete to warrant summary judgment at that juncture.  *Id*. at 334.

Plaintiff, just like those in *Lee v. Ethan Allen Retail, Inc*. (cited with approval by Judge Sand), did not always or almost always earn the same fixed amount each week and his earnings fluctuated based on the amount of his sales and services rendered.  651 F.Supp.2d 1361, 1367

(N.D. Ga. 2009).  Because of Plaintiff's earnings "resulted from the application of a bona fide commission rate, and are commissions within the meaning of Section 207(i)," EJY will carry its burden in demonstrating that Plaintiff is exempt from the FLSA's overtime provisions.

**II.     Plaintiff's Motion for Conditional Collective Action Certification Should be Deferred Until After the Court Rules on Defendants' Upcoming Motion for Summary Judgment**

This Court has repeatedly held that a district court may reserve decision on a class or collective motion "pending disposition of a motion for summary judgment."  *Rabin v. Mony Life Ins. Co.*, No. 06-cv-775, 2009 WL 4060978, at *6 (S.D.N.Y. Nov. 19, 2009); *see also Encarnacion v. Astrue*, 491 S.Supp.2d 453, 459 (S.D.N.Y. 2007) (granting defendant's motion for summary judgment prior to deciding plaintiffs' motion for class certification because class certification "would be futile" in light of the lack of merit to plaintiffs' claims); *Project Release v. Prevost*, 722 F.2d 960, 963 & n. 2 (2d Cir. 1983) (affirming lower court's decision to grant summary judgment prior to ruling on plaintiffs' pending motion for class certification); *Amendola v. Bristol-Myers Squibb Co*., 558 F.Supp.2d 459, 467 (S.D.N.Y. 2008); *Pefanis v. Westway Diner, Inc*., 2010 WL 3564426, at *3 (S.D.N.Y. Sept. 7, 2010).

In *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010), District Judge Leonard B. Sand did exactly what Defendants request.  In a case involving the retail service exemption, Judge Sand deferred ruling on plaintiffs' motion for collective and class certification until the defendants' motion for summary judgment was also before the Court.  Judge Sand then decided each of the motions in one decision.

Here, Plaintiff's claim for overtime compensation is so untenable and EJY's strong showing of entitlement to the application of the retail service exemption should dictate

reluctance in the Court issuing notice to individuals who will in all likelihood have no claims once Defendants' motion for summary judgment is granted.

It would be impractical for the Court to adjudicate the instant motion for collective action certification when, whether granted or denied, it may in fact be mooted by Defendants' motion for summary judgment.  Such a result could cause confusion for the putative class members, as the underlying action referenced in any collective notice might be dismissed with prejudice before they even send out their respective opt-in forms.  Moreover, if the collective action is tentatively certified, the Court could be requiring the parties – and the Court- to expend significant time and resources on the collective notice process itself which would later be mooted.

Accordingly, the Court should defer its decision on the instant motion until after it adjudicates Defendants' motion for summary judgment which will be filed by mid-September.

### III.    The Proposed Notice of Pendency is Improper

In the event that collective certification is granted, Defendants set forth the following arguments with respect to the notice and class proposed by Plaintiff.

#### a.  The Proposed Class is Overbroad

As discussed supra, Plaintiff is not representative or similarly situated to all the carpet technicians whom he seeks to have included in the collective class.  While EJY disagrees that Plaintiff was similarly situated to any other employees, at most, Plaintiff was similarly situated to other crew chiefs.  Plaintiff only held the position of crew chief during the FLSA three year period.  Accordingly, Plaintiff's proposed class must be rejected.

### b.  Plaintiff is Not Entitled to Send Notice to Carpet Technicians Dating Back Six Years From the Filing of the Complaint

Plaintiff's request to send notice to carpet technicians dating back six years from the January 29, 2015 filing of the Complaint is completely overbroad for several reasons.

First, Plaintiff admits that EJY began paying overtime to carpet technicians beginning in May 2013.  See Walston Decl. ¶ 17-18.  Accordingly, neither Plaintiff nor any other carpet technician could have been a victim of an illegal pay policy after that date.  In fact, as set forth in multiple affidavits, EJY changed the compensation structure on March 10, 2013.  Accordingly, Plaintiff is not able to articulate any reason why employees who were only employed after March 10, 2013 should receive the Notice.  Therefore, Plaintiff should not be permitted to send notice to carpet technicians (or crew chiefs) who were only employed by EJY between March 10, 2013 and the present.

Second, Plaintiff is not entitled to send notice of the FLSA collective action to employees going back six years, since the FLSA statute of limitations is only two years, and three years if willfulness if found.  *See McBeth v. Gabrielli Truck Sales, Ltd*., 786 F.Supp.2d 396, 399 (E.D.N.Y. 2011) ("The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years.").  Plaintiff has mixed the much shorter FLSA statute of limitations with the longer NYLL statute of limitations.  The statute of limitations under state law is six years.  See Labor Law 198(3).  Inexplicably Plaintiff asks for a collective action class covering a period of six years.  Such a class cannot possibly be certified since the FLSA statute of limitations is two years and three years at most if the violation is willful.

Accordingly, the Court should follow *Romero v. La Revise Associates, LLC,* which denied the plaintiffs' request for a six-year notice period.  968 F.Supp.2d 639, 649 (S.D.N.Y. 2013).  The court stated:

> Three years is the maximum time period to join an FLSA collective action and there is no New York state class action certified as of yet.  If and when a class is certified under New York law, class members will receive notice at that time through the class action notification process.  *Id.*

The "growing trend in this district appears to be limiting the notice period to three years." *McBeth*, 768 F.Supp.2d at 399-400; *see e.g. Lujan v. Cabana Management, Inc.*, 10-cv-755, 2011 WL 317984, at *9 (E.D.N.Y. Feb. 1, 2011); *Monger v. Cactus Salon & Spa's LLC*, 08-cv-1817, 2009 WL 1916386, at *3 n. 2 (E.D.N.Y. July 6, 2009); *Laroque v. Domino's Pizza*, 557 F.Supp.2d 346, 355 (E.D.N.Y. 2008); *Sobvzak v. AWL Industries, Inc*., 540 F.Supp.2d 354 (E.D.N.Y. 2007).

In *Lujan*, the court held the purpose of a conditional certification motion is "to notify and inform those eligible to opt in to the collective action, and time-barred former employees may not do so."  2011 WL 217984 at *9.  The court saw "no purpose in sending such employees a notice informing them that (1) there is a pending opt-in lawsuit, (2) they may not opt in, and (3) they may later receive another notice should their status change due to a class certification."  *Id.*

The rationale to limit the notice to three years in this case is even more compelling than in the cases cited above.  First, Defendants will file a motion for summary judgment by mid-September.  If that motion is granted then any employee who received opt-in notice will need to receive subsequent notice that the action is dismissed.  Such notice would be confusing enough for those within the three year opt-in period.  However, those with only state claims would have first received a notice that they cannot presently opt-in but may later be able to opt-in, and then they will receive a notice that the lawsuit has been dismissed.  Given EJY's showing that the

retail exemption applies to crew chiefs (as well as to helpers and assistants), sending notice for a six year period would result in mass confusion and could be mooted soon after it is received.

Second, unlike the typical case, the FLSA collective period is very short in this case. If a violation is found the FLSA period will cover only the time period from January 29, 2013 to March 10, 2013, less than 2 months. If willfulness is found then the period would cover just one year and two months (January 29, 2012 to March 2013). Requiring EJY to produce information for employees going back six years (January 29, 2009), would require EJY to produce significantly more information for those employees who may have state claims compared to those who have FLSA claims. In the cases cited by Plaintiff, the rationale for production of 6 years was that it would be burdensome to require the employer to make two separate productions (given that the 3 year FLSA period was equivalent to the extra 3 years under state law). However, Plaintiff's FLSA collective action claims could require, at most, production of employees' information covering a period of 1 year and two months. If the Court includes the state law claims the production will then become much more burdensome as it will cover 4 years and 2 months. That would not serve the interest of efficiency.

Third, Plaintiff's proposed Notice of Pendency is severely deficient in light of their request to send it employees going back six years. The Notice does not even mention the NYLL claims and that the employees have no FLSA claim if they were not employed since January 29, 2012. The Notice improperly tells all individuals receiving the Notice that they can opt-in to the action even though those who only worked prior to January 29, 2012 are not allowed to opt-in. There is also no notice that they may later receive a notice regarding a status change due to class certification.

Accordingly, the Notice of Pendency should be limited to those crew chiefs employed by EJY for the period of January 29, 2012 to March 10, 2013.

### c.  The Notice Should Not be Posted at EJY's Business Location

Plaintiff has not set forth a single reason supporting his request to post the notice at EJY's place of business.  In fact, there is no rationale for requiring EJY to post notice at its business location when the most recent alleged FLSA violation occurred two-and-a-half years ago.  EJY changed its compensation policy for carpet technicians on March 10, 2013.  Plaintiff admits that no overtime violations occurred after the change in policy.  If conditional certification is approved, the purpose of the Notice is to notify employees who were employed prior to March 10, 2013, not EJY's current employees.

Plaintiff has failed to cite a single case in which notice was required to be posted at a business location when the Plaintiff did not allege a current violation of the FLSA.  In fact, the only case cited by Plaintiff involved claims that current employees were victims of an FLSA violation.  *See Garcia v. Pancho Villa's of Huntington Vill., Inc*., 678 F.Supp.2d 89, 96 (E.D.N.Y. 2010).  No such claim is made here.

Accordingly, the Notice of Pendency should not be posted at EJY's business location.

### d.  Plaintiff is Not Entitled to Production of Employees' Phone Numbers

Plaintiff also asks the Court to order EJY to produce the telephone number of all the employees in the FLSA collection.  This is improper.  At most, Plaintiff would be entitled to mail the Notice to employees.  Counsel is not permitted to individually solicit potential opt-ins by calling them.  Thus, there is absolutely no reason for Plaintiff's counsel to have employees' phone numbers.

### e.  The Content of the Notice is Improper

EJY also object to other content contained in the Notice.  First, the title of the Notice is improper.  It is axiomatic that the notice is called a "Notice of Pendency," not a Notice of Lawsuit with Opportunity to Join."  Such a title is clearly just counsel's commentary and should not be included in a Notice of Pendency which comes from this Court.  In addition the "TO" and "RE" lines on the first page, which are also in bold and all caps, are improper.  Again, this is a notice from the Court and instead reads like impermissible attorney advertising.

Second, in the "Description of the Lawsuit" on page 1, Plaintiff's claims are discussed in two paragraphs while only one conclusory sentence is set forth regarding Defendants' contentions.  The Notice comes from the Court and the fact that the majority of the lawsuit description is about the Plaintiff's claims shows a clear bias.  Defendants should be permitted to submit language specifically outlining their contentions in this lawsuit and do so in two paragraphs just as Plaintiff's description of his claims takes up two paragraphs.

Third, under "Your Right to Participate in this Suit" on page 2, opt-in plaintiffs should not be permitted to fax a consent form to Plaintiff's counsel.  It would be highly improper for Plaintiff to file with the Court a faxed consent form instead of an original.  Moreover, consent forms should be sent to the Clerk of the Court, not to Plaintiff's attorneys since it is the filing with the Clerk that enables a person to join a lawsuit.

Fourth, Plaintiff's counsel has failed to set forth either their hourly rate or their contingency fee.  Opt-in plaintiffs must be given advance notice of the fee arrangement with counsel before agreeing to be represented by counsel by filing a consent form.

Fifth, the entire fourth page should be deleted.  The "**PLEASE NOTE**" section clearly comes from Plaintiff's counsel and not the Court.  Moreover, that same information is

already set forth in the notice.  Counsel's contact information is also contained elsewhere in the

Notice.


**CONCLUSION**

Based upon the foregoing, Defendants respectfully request the Court deny Plaintiff's

motion for conditional collective certification in its entirety or in the alternative withhold a ruling

until Defendants' motion for summary judgment is decided.


Dated: August 7, 2015
      Syosset, New York

                    ALAN B. PEARL & ASSOCIATES, P.C.
                    *Attorneys for Defendants*

          By:         /s/
                    Brian J. Shenker, Esq.
                    6800 Jericho Turnpike, Suite 218E
                    Syosset, New York 11791
                    (516) 921 - 6774


TO:   Justin Reilly, Esq.
       Neil H. Greenberg & Associates, P.C.
       900 Merchants Concourse, Suite 314
       Westbury, New York 11590